Wolff & Samson PC
The Offices at Crystal Lake
One Boland Drive
West Orange, New Jersey 07052
973-325-1500
Robert E. Nies (REN-3034)
Attorneys for Plaintiff Oriska Insurance Company

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORISKA INSURANCE COMPANY, <br>                 Plaintiff, <br><br> v. <br><br> ALL STAFFING, INC., STANLEY J. COSTELLO, ANGELA L. COSTELLO, PAULA DIGILIO, DALRADA FINANCIAL CORPORATION, FENIX CAPITAL GROUP, LLC, ASI EMPLOYER SOLUTIONS, LONGVIEW FUND, LP, LONGVIEW FUND INTERNATIONAL, LTD., HEDGE FUND SERVICES, INC., BROCK EMPLOYEE SERVICES, INC. d/b/a ALL STAFFING SERVICES, VIKING ASSET MANAGEMENT, LLC, JOHN DOES 1-50; AND JOHN DOE COMPANIES, JOINT VENTURES, AND/OR PARTNERSHIPS 1-50, <br><br>                 Defendants. | Case No.: <br><br><br> **COMPLAINT** |

Plaintiff Oriska Insurance Company ("Oriska" and/or "Plaintiff"), by way of Amended

Complaint against Defendants, says:

## NATURE OF THE ACTION

1. This action arises out of a prolonged course of fraudulent conduct directed by Defendants against Plaintiff, other workers compensation insurance carriers, state workers compensation and labor regulatory entities, and business customers of certain of the Defendants, customers which sought workers compensation insurance coverage for their respective employees. That conduct included but was not limited to Defendants' willful violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), the New York General Business Law § 349, the New York Insurance Frauds Prevention Act, N.Y. Ins. Law § 401 et seq.; the New Jersey Fraud Insurance Prevention Act, N.J.S.A. § 17:33A-1, et seq., and Pennsylvania's Unfair Insurance Practices Act, 40 P.S. § 1171.1 et seq., and their having engaged in acts constituting misappropriation of insurance premiums paid, conspiracy to commit fraud, mail fraud, constructive fraud, unjust enrichment, misrepresentation, and conversion.

2. Specifically, this action arises from an elaborate scheme conceived and perpetrated principally by one individual, Stanley J. Costello ("S. Costello"). S. Costello soon was joined by his lifetime friend, Al Sebia ("A. Sebia"). They in turn were joined by Angela Costello ("A. Costello") in the fraudulent scheme, the express purpose of which was to defraud Oriska, other insurers, and the Defendants' business clients through the creation and operation of one or more corporations whose principal purpose - - to the exclusion of any legitimate business purpose - - was from the very inception to commit workers compensation insurance fraud.

3. Defendants accomplished this fraud by lying to insurance companies and state government regulatory bodies to obtain lower premiums than were commensurate with the

scope of insurance coverage for the pool of clients identified by Defendants, by failing to remit appropriate insurance premiums to the insurance companies due to Defendants' use of false gross payroll records and other fraudulent devices, and by canceling insurance policies (or never implementing coverage for said policies), while unlawfully collecting premiums from business clients, thus leaving many businesses, and their unsuspecting employees, without workers compensation insurance when they thought they were covered and had paid Defendants for that phantom coverage.

4.   During the period of at least 1990 to present (the "Active Fraud Period"), Defendants directly and indirectly through various sham corporations, sham partnerships, and sham joint ventures, used false, misleading and otherwise fraudulent representations and business practices to obtain workers compensation insurance from Oriska, and other insurers, in excess of several millions of dollars.  The fraud occurred throughout the United States, including in California, Connecticut, Delaware, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, and Tennessee, although most of the fraud involving Plaintiff was centered in New York and Pennsylvania.

5.   The fraud had many facets: proof of insurance coverage enabled Defendants to obtain premium payments from various clients, businesses that had properly engaged Defendants to provide workers compensation insurance for their employees and, in fact, had paid for such insurance coverage.  Those premium payments to Defendants never were remitted to Plaintiff or other insurance carriers because Defendants either had never procured the policies as promised or, in some cases, promptly had cancelled the insurance policies once customers started to pay premiums to Defendants.  Thus, throughout the Active Fraud Period, Defendants

cancelled insurance policies with one insurer, or replaced insurance carriers, but continued to collect premiums from clients without remitting any portion of the premiums to insurers. The insurance provided should have been substantially more expensive than what Defendants actually paid, because Defendants' misrepresentations concerning gross payroll and employee job classifications were designed to, and in fact did, unlawfully reduce the insurance premiums. These were the principal means by which Defendants unjustly enriched themselves, rather than pay the appropriate premiums for intended insurance coverage.

6. Ultimately, Defendants' fraud had three intended targets: (i) insurance carriers, which were paid lower than required premiums based on falsified insurance applications and periodic reports, and thus, were defrauded of several millions of dollars in premium payments; (ii) Defendants' business clients, customers who unsuspectingly continued to pay premiums on policies Defendants had canceled or never procured, and thus, paid for coverage that did not exist, a fact which was not disclosed until insurance claims had been filed and rejected; and (iii) state government insurance regulatory bodies charged with regulating insurance companies, insurance coverage, and protecting employees, which regulatory process and safeguards Defendants fraudulently circumvented by, inter alia, maintaining two sets of business records, misrepresenting the coverage they ostensibly had secured to prevent their scheme from being uncovered, and acting as an unregulated self-insurer to process and control claims for which no primary insurance coverage actually existed.

7. Upon information and belief, the fraud perpetrated by the Defendants upon Plaintiff, other insurers, Defendants' own clients and state regulatory bodies could not have been accomplished without the active and knowing participation of a number of yet-to-be-identified

individuals, professionals, and agents, presently designated in the caption as John Does, and other sham and alter ego companies, including the John Doe companies, joint venturers and/or partnerships, established by Defendants but as yet unidentified.

## THE PARTIES

8. Oriska is and was at all relevant times a domestic stock insurance company organized pursuant to the laws of the State of New York, with its principal place of business at Oriskany, New York.

9. Upon information and belief, Defendant All Staffing, Inc. ("All Staffing"), is and was at all relevant times a foreign corporation organized pursuant to the laws of the State of Tennessee, with its principal place of business at P.O. Box 189, 100 West Ridge Street, Lansford, Pennsylvania 18232, and which is authorized, or holds itself out as authorized, to do business in, inter alia, the States of New York, New Jersey, and Pennsylvania.

10. Defendant S. Costello is an individual who is a shareholder, officer, employee, and/or person in control of All Staffing, having a personal address of 645 E. Bertsch Street, Lansford, Pennsylvania 18232. S. Costello, at various and different times during the Active Fraud Period, was a principal architect of the scheme to defraud Plaintiffs, other insurers, All Staffing's business clients and state regulatory agencies, and a de facto principal or person in control of one or more of the sham corporations, sham partnerships, and sham joint ventures used to defraud Plaintiff, other insurers and All Staffing clients.

11. Upon information and belief, Defendant A. Costello is an individual who is a shareholder, officer, employee, and/or person in control of All Staffing, with a personal address of 645 E. Bertsch Street, Lansford, Pennsylvania 18232. A. Costello is married to S. Costello.

Upon information and belief, A. Costello, at various and different times during the Active Fraud Period, was also a principal architect of the scheme to defraud Plaintiff, other insurers, All Staffing's business clients and state regulatory agencies, and a de facto principal or person in control of one or more of the sham corporations, sham partnerships, and sham joint ventures used to defraud Plaintiff, other insurers and All Staffing clients.

12.  Upon information and belief, Defendant Paula Digilio ("P. Digilio") is an individual who is, and at all relevant times has been, the payroll manager at All Staffing with a business address of 100 West Ridge Street, Lansford, Pennsylvania 18232.  Upon information and belief, P. Digilio, at various and different times during the Active Fraud Period, conspired with Defendants to defraud Plaintiff, other insurers, All Staffing's business clients and state regulatory agencies.

13.  Upon information and belief, Dalrada Financial Corporation ("Dalrada") is a public company organized and existing under the laws of the State of Delaware with its principal place of business located at 9449 Balboa Avenue, Suite 210, San Diego, California 92123.  Upon information and belief, Dalrada has been a vehicle used by Defendants to hide, perpetrate, expand and perpetuate the fraud scheme implemented by S. Costello and A. Costello at All Staffing.  Plaintiff will not seek to recover damages from Dalrada as a defendant in  this litigation provided Dalrada gives truthful testimony in this case.

14. Upon information and belief, Defendants Longview Fund, LP, a California limited partnership, Longview Equity Fund, L.P., a limited partnership, and Longview Fund International, Ltd., a company established in the British Virgin Islands, are hedge funds whose administrator is defendant Hedge Fund Services, Inc., of the British Virgin Islands (collectively,

the "Longview Entities"). The Longview Entities have a principal place of business at 600 Montgomery Street, 44th Floor, San Francisco, California 94111. Upon information and belief, the Longview Entities are de facto principals, shareholders and/or persons in control of All Staffing, and have been vehicles used at times during the Active Fraud Period by Defendants to hide, perpetrate, expand and perpetuate the fraudulent scheme implemented by S. Costello and A. Costello at All Staffing in addition to causing additional harms to Plaintiff by (i) preventing Plaintiff from uncovering the nature and extent of All Staffing's fraud, including having prevented the taking of necessary audits to identify and collect its losses, (ii) causing Plaintiff additional monetary losses due to, for example, litigation expenses and lost interest on its damages, (iii) upon information and belief, wrongfully having dissipated assets during the Active Fraud Period to prevent recovery by Plaintiff.

15. Upon information and belief Defendant Hedge Fund Services, Inc. ("Hedge"), a company established in the British Virgin Islands, is the administrator of the Longview Entities and maintains control of the Longview Entities. Hedge, on information and belief, has a principal place of business at 600 Montgomery Street, 44th Floor, San Francisco, California 94111.

16. Upon information and belief, Defendant Viking Asset Management, LLC ("Viking"), whose principal place of business is located at the Transamerica Pyramid, 600 Montgomery Street, 44th Floor, San Francisco, California 94111, is responsible for and in control of the management of the Longview Entities.

17. Upon information and belief, Defendant Fenix Capital Group, LLC ("Fenix"), is a straw corporation formed by or on behalf of the Longview Entities to insulate the Longview

Entities from an appearance of direct control and ownership of All Staffing. Fenix has a principal place of business at 418 E. 59th Street, 14A, New York, New York 10022.

18. Upon information and belief, Defendant ASI Employer Solutions ("ASI"), with its principal place of business at P.O. Box 219, 100 West Ridge Street, Lansford, Pennsylvania 18232, is an alter ego of and/or successor-in-interest to Fenix, Dalrada, and All Staffing, and has been a vehicle used at times during the Active Fraud Period by Defendants to hide, perpetrate, expand and perpetuate the fraudulent scheme implemented by S. Costello and A. Costello at All Staffing.

19. Upon information and belief, Defendant Brock Employee Services, Inc., d/b/a All Staffing Services, is an alter ego of and/or successor-in-interest to Fenix, Dalrada, and All Staffing and has been a vehicle used at times during the Active Fraud Period by Defendants to hide, perpetrate, expand and perpetuate the fraudulent scheme implemented by S. Costello and A. Costello at All Staffing. Upon information and belief, Brock Employee Services, Inc.'s principal place of business is at 100 West Ridge Street, Lansford, Pennsylvania 18232.

20. A. Sebia, who was at certain relevant times a shareholder, officer, and/or employee of All Staffing and Dalrada, residing at 305 Mill Road, Lehighton, Pennsylvania 18235, is a co-conspirator with the Defendants. Plaintiff and A. Sebia have agreed that Plaintiff will indemnify and hold harmless A. Sebia for any losses as a result of this litigation, provided A. Sebia gives truthful testimony in this case.

## JURISDICTION AND VENUE

21. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the Federal RICO Claims, 18 U.S.C. § 1964, et seq., alleged in this Complaint, and supplemental jurisdiction over the state and common law claims, under 28 U.S.C. § 1367.

22. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) and (c).

## FACTS COMMON TO ALL COUNTS

### A. The Genesis of the Scheme To Defraud.

23. Upon information and belief, in or about 1990, S. Costello devised a scheme to act as an intermediary in an effort to defraud both insurance companies that provide workers compensation policies and the businesses that need workers compensation coverage for employees. The vehicle for this fraudulent scheme was a professional employer organization ("PEO").

24. A PEO is a business that is primarily engaged in providing personnel functions and human resource services to its client companies, including, inter alia, outsourcing payroll services, medical and retirement benefits, unemployment compensation processing, workplace safety procedures, and workers compensation coverage.

25. While PEOs may operate legitimately, many are frauds from their very inception. For example, approximately fourteen PEOs, and seven individuals who operate the PEOs, have been indicted in 2008 and 2009 by the State of New Jersey for their alleged roles in workers compensation scams that are similar to, if not identical with, Defendants' alleged workers compensation fraud.

26. Upon information and belief, S. Costello in or about 1990 encouraged A. Sebia, his high school football teammate, to get into the PEO business with him, and told A. Sebia that a

lot of money could be made with PEOs by deceiving insurers through falsified payroll and classification code reports.

27. Upon information and belief, S. Costello and A. Sebia formed a PEO, Affordable Labor Leasing ("Affordable"), in 1990, but closed the company in 1993 due to failure to pay IRS taxes. At all relevant times during Affordable's existence, S. Costello and A. Sebia used Affordable as a business entity to defraud insurance carriers and customers of Affordable.

28. Upon information and belief, S. Costello and A. Sebia launched a new PEO in 1993, which is the entity identified here as Defendant All Staffing. All Staffing from its inception was never operated as a legitimate business. To the contrary, at all relevant times All Staffing was used as a vehicle to defraud insurance carriers and customers of All Staffing.

29. Upon information and belief, A. Costello joined All Staffing in early 1995 and, by 1997, had developed and implemented a new software system that enabled All Staffing to systematically defraud insurance carriers and All Staffing customers far beyond the scheme implemented by S. Costello in his initial efforts with Affordable. That system created and maintained two sets of business records, designated All Staffing 1 and All Staffing 2; one set encompassed records for submission to state agencies as required by law and, specifically, to prevent detection of Defendants' far-reaching fraud by All Staffing's clients; and the other set encompassed misrepresentations concerning gross payroll amounts and work code classifications, which business records routinely were submitted to insurers to fraudulently achieve lower premiums based on falsified data regarding the number and work classification of client employees.

30. Upon information and belief, S. Costello and A. Costello admitted to A. Sebia that they were maintaining two separate sets of business books and records for the express purpose of obtaining lower premiums from insurance companies, while simultaneously appearing compliant with reports to state agencies and their business customers.

31. Defendants' scam encompassed three levels of fraud. First, Defendants submitted to insurers, including Plaintiff, falsified applications and periodic reports for workers compensation insurance that omitted and misrepresented the information on the applications and reports, including having intentionally misstated the number of employees on a given payroll to be covered by the workers compensation policies, the kind of work the employees performed, and the history of previous injury claims of the respective employers. These factors are all relevant to determining the premiums to be charged for insurance, and Defendants' purpose was to minimize amounts paid to insurers in premiums while maximizing the premiums collected from customers (who paid for but unsuspectingly did not receive full insurance coverage for their employees).

32. The second level of fraud was directed to Defendants' business customers. Through the use of various subterfuges, such as obtaining and providing a customer with proof of insurance in order for the customer to commence payment of premiums, but then canceling the insurance in order to forgo remitting premiums to the insurance carriers, Defendants were able to collect from customers valuable insurance premiums without in turn remitting appropriate premiums to the insurance carriers, pocketing the illicit gains. To perpetrate and conceal their fraud, Defendants switched insurance carriers to cancel previously issued policies.

33. The third level of fraud entailed the regulatory agencies. Defendants circumvented and usurped the function of various state regulatory bodies that are charged with regulating and protecting the insurance industry and the public users of insurance. One scheme, for example, entailed Defendants controlling and processing claims by employees against phantom insurance policies - - ones that had been cancelled or never existed - - in a form of unregulated self-insurance. This also served to prevent or delay the fraud being discovered.

34. Like most insurance companies, Plaintiff contractually requires its workers compensation policies to be audited from sixty to ninety days after expiration of the policy, whereby one of the auditor's duties is to verify the reported payroll amounts and to reconcile the class codes on the policy with the actual job descriptions of the employees of All Staffing's customers. An integral part of the fraud is Defendants having systematically sought to avoid or delay timely audits.

35. Upon information and belief, Defendants also systematically switched carriers at the renewal dates for the workers compensation policies to prevent insurers, such as Plaintiff, from discovering the scam since, in the absence of providing the insurers with access to audit Defendants' actual business records, an insurer could not readily detect any misclassifications of job codes or fraudulently reduced gross payroll records.

36. Upon information and belief, Defendants financed a lavish lifestyle on their fraudulent profits, having purchased an extraordinary number of company cars, a restaurant, personal residences, a ranch in Texas, and season tickets to various professional sporting events, including eight season tickets to the Philadelphia Eagles, and four season tickets to each of the

Dallas Cowboys and the Indianapolis Colts.   This lifestyle was funded by Defendants' fraudulent scheme.

## B. All Staffing Defrauds Oriska.

37. From 2002 to 2004, All Staffing solicited Oriska for workers compensation insurance.  Upon information and belief, S. Costello initially intended and targeted Oriska to be a "captive" insurance carrier, an unwitting participant to issue false proofs of insurance in the ongoing fraud of All Staffing clients.  That plan, which, if successful, would have resulted in zero premiums being remitted to Oriska while All Staffing customers continued to pay the premiums to All Staffing, was effectively thwarted when Oriska changed ownership after the first two policy periods and S. Costello could no longer control Oriska.

38. In 2002, Oriska first provided a workers compensation policy to All Staffing for coverage of All Staffing customers in New York and Pennsylvania.  As an integral part of the scheme to defraud All Staffing customers, within six months All Staffing terminated the Oriska coverage, claiming to have secured coverage from an "off shore" insurance carrier in the Cayman Islands or Bermuda.  Thereafter, as a further integral part of the fraud, All Staffing returned to Oriska for coverage, again allowing All Staffing to collect premiums from customers without remitting premiums to the insurance carriers.  During these times, All Staffing clients' employees, in fact, had no insurance coverage.

39. The relevant Oriska insurance policy periods covered March 1, 2002 to July 1, 2002; July 1, 2002 to July 1, 2003; and July 1, 2003 to July 1, 2004.  For each period, Oriska

issued to All Staffing a workers compensation policy, policy number WC02060008 (the "Master Policy"). In conjunction with issuance of this Master Policy, Oriska issued to All Staffing various sub-policies to co-employer clients of All Staffing.

40. At one point during the Active Fraud Period, insurance claims filed by employees of All Staffing clients were handled by a third-party claims processor. Certain of the Defendants caused that claims processor to be terminated. Thereafter, as an integral part of the All Staffing fraud, All Staffing negotiated a "high deductible" policy, one that provided All Staffing with control over the handling and processing of workers compensation claims. As a result, All Staffing - - not an independent third-party - - controlled whether to reject or pay employee claims not otherwise covered by insurance, which allowed the fraud to continue undetected.

41. Oriska issued the Master Policy based on gross payroll and separate class codes that the Defendants estimated at the beginning of the policy term and periodically updated throughout the policy term.

42. The workers compensation insurance provided by Oriska to All Staffing covered All Staffing's clients' employees working for businesses in various states, including the States of New York, New Jersey and Pennsylvania.

43. Upon information and belief, Oriska's initial billing for premiums to All Staffing, which ran from March 1, 2002 to July 1, 2002, was estimated. Billings were adjusted based on payroll that All Staffing reported to Oriska it had paid, known as a "self-reported payroll." Subsequent premium billings were also based on a self-reported payroll, until the termination of All Staffing's insurance coverage.

44. Upon information and belief, customers of All Staffing filed hundreds of claims for workers compensation injuries during the period of Oriska having ostensibly provided coverage for those employees; upon information and belief, a substantial number of the claims did not correspond with All Staffing's representations of the employee class covered. In some cases, Oriska had not issued insurance for these claims, while All Staffing had collected premiums from its customers precisely for the claims asserted.

45. Upon information and belief, All Staffing collected premiums from multiple clients in Pennsylvania and New York for policies that did not exist, and for which no premiums were paid to Oriska or any other insurer, although All Staffing had represented to those clients that Oriska provided them with workers compensation coverage.

46. Oriska identified some of these clients when it received notice from state regulatory agencies that it had received claims for employees which were not included in its policies. These All Staffing clients, who were defrauded along with Plaintiff and state regulatory agencies, include, upon information and belief, the following Pennsylvania companies: Oliver Sprinkler, Jurin Roofing Services, Nestor Bros., Inc., Orens Brothers Real Estate, Turosky Chiropractic, Custom Grapix, Inc., Townscapes, Inc., West Penn Contracting, C.W. Schultz & Son, Inc., Lubeco Incorporated, Administrative Job Connection Services, All Purpose Construction, Carbondale Technology Transfer Center, Genesis Electrical, Inc., and Hydro Corp.

47. New York companies, which were defrauded along with Plaintiff and state regulatory agencies, include, upon information and belief: Anthony Scatena Insurance, Behavioral Seminar Office of Fedi, Blue Line Hockey Inc., Emenee Accessories, Fedi, James

and Saretha Post, Main Urology Assoc PC, Mobil Catering and Cart Inc., and Professional Medical Arts PC.

48. All Staffing misrepresented the gross payroll amounts and class codes for customer employees on its periodic reports submitted to Oriska for insurance coverage, resulting in fraudulent underpayment of more than a million dollars of insurance premiums to Oriska.

49. A similar analysis of New York shows, for the period 2002 to 2004, All Staffing calculated premiums of $1,057,284.21 when the actual manual premium owed was $2,657,158.77.

50. Specifically, between 2003 and 2004 in Pennsylvania alone, the premiums All Staffing reported it owed to Oriska equaled $537,722, for accounts in Pennsylvania, but the premiums All Staffing reported it owed to the State of Pennsylvania equaled $2,231,177.

51. Over the course of the Active Fraud Period, Defendants, directly and indirectly through the use of All Staffing, Dalrada and Fenix, caused to be delivered by mail to Oriska, and the other insurers it defrauded, falsified records and other client/employee statements purporting to represent gross payroll amounts and the client employee job classifications at different times throughout the Active Fraud Period (the "False Records").

52. Upon information and belief, the False Records provided to Oriska and other insurers were fraudulent as the information set forth in each False Record intentionally misrepresented the gross payroll amounts and job class and number of employees in order to obtain lower premium rates.

53. Throughout the Active Fraud Period, Defendants treated the savings as a result of the premiums having not been paid as the means to fund an extravagant lifestyle and, upon

information and belief, frequently and freely transferred these savings, from the premiums not paid, by wire transfer and other means, by and between All Staffing and Defendants, utilizing the funds for their own personal financial gain rather than as premiums that were intended to procure insurance for the benefit of the client employees.

54.  As an active participant in and beneficiary of All Staffing's scheme to procure reduced rates on insurance premiums and to collect premium payments from client employees when no insurance policies were in place, Defendants diverted premiums for personal benefit and enrichment during the Active Fraud Period, used or authorized the use of the United States Postal Service to commit mail fraud, as proscribed in 18 U.S.C. § 1341, and falsely represented clients' gross employee payroll numbers and class codes to insurers, including Oriska.

55.  These mail fraud violations were conducted over an almost twenty-year period, and continue to be conducted, and constitute predicate acts.  They also constitute acts of insurance fraud.

56.  To facilitate All Staffing's diversion of premiums for personal benefit and enrichment, including the benefit and enrichment of the other Defendants, on numerous occasions during the Active Fraud Period Defendants (not including All Staffing) engaged in a clear pattern of racketeering activity, which affected interstate and foreign commerce. Specifically, Defendants committed wire fraud, as proscribed in 18 U.S.C. § 1343, by unilaterally and knowingly transferring by electronic means funds in Defendants' accounts, which Defendants knew or should have known were the illegal gains of diverted premium payments, to wrongfully enrich Defendants.  In taking funds from All Staffing's accounts,

Defendants exercised control over the very subject matter at the heart of the fraud and these actions constitute predicate acts over an almost twenty-year period.

57. Additional predicate acts and participation in the All Staffing fraud occurred on each of the numerous occasions during the Active Fraud Period when S. Costello, A. Costello and the Defendants, other than All Staffing, deceived their clients and clients' employees, affecting the public at large, in violation of New York's Gen. Bus. Law § 349.

58. Further predicate acts and participation in the All Staffing fraud occurred on each of the numerous occasions during the Active Fraud Period when S. Costello, A. Costello and the Defendants, other than All Staffing, circumvented and usurped the function of various state regulatory bodies, in violation of various state statutes, including the New York Insurance Frauds Prevention Act, N.Y. Ins. Law § 401 et seq.; the New Jersey Insurance Fraud Prevention Act, N.J.S.A. § 17:33A-1, et seq., and Pennsylvania's Unfair Insurance Practices Act, 40 P.S. § 1171.1 et seq.

## C. Additional Defendants Perpetuate and Expand the All Staffing Fraud.

59. Upon information and belief, S. Costello, A. Costello and A. Sebia began negotiating with Dalrada, between 2005 and 2006, for Dalrada to acquire the stock of S. Costello and A. Sebia in, and/or the assets of, All Staffing. The purpose of these negotiations was to expand and/or perpetuate - - through an infusion of capital and other valuable consideration and expertise - - the fraud implemented by All Staffing. Specifically, the principal "assets" of All Staffing are its customer lists. To expand its fraud, All Staffing necessarily had to expand its customer base and an alliance with Dalrada accomplished that objective.

60. During the negotiations, Dalrada conducted due diligence and learned that All Staffing maintained two sets of books to defraud Oriska and other insurance carriers. At a meeting for due diligence in Texas, S. Costello admitted to representatives of Dalrada that All Staffing kept two sets of business records. A. Sebia thereafter sent an e-mail to Dalrada, confirming that All Staffing maintained two separate books of records.

61. Notwithstanding that Dalrada knew or should have known that All Staffing was engaged in a massive insurance fraud, on or about September 1, 2006, All Staffing and Dalrada executed a Stock Purchase and Sale Agreement ("Agreement"), pursuant to which Dalrada purportedly acquired the stock of S. Costello and A. Sebia in All Staffing.

62. Upon information and belief, the Agreement was never consummated and never became effective, even though thereafter S. Costello, A. Sebia, and A. Costello became officers, employees, and/or directors of Dalrada to continue, hide and greatly expand the fraudulent activity of All Staffing. S. Costello, A. Costello, A. Sebia and Sebia's wife, Pam Sebia, were paid yearly salaries as employees of Dalrada, which also had paid $250,000 on the Agreement, which money was diverted from All Staffing to purchase real estate in Texas for Defendants' personal benefit.

63. Defendants continued their scheme to defraud insurers and clients and their employees through the operation of Dalrada, even though Dalrada never acquired legal control of All Staffing and only exercised actual control over All Staffing's operations, including the fraudulent scheme.

64. At all relevant times on, before and after September 1, 2006, the Longview Entities controlled the operations of Dalrada and, in turn, All Staffing. Through the exercise of control

over Dalrada, the Longview Entities knew or should have known that All Staffing was engaged in a massive scheme to defraud insurance carriers and customers of All Staffing. Despite that knowledge, the Longview Entities knowingly took control over All Staffing through Dalrada, even though Dalrada lacked legal ownership of All Staffing, to prevent Plaintiff from uncovering the nature and extent of the fraud in order to continue unfettered with its fraudulent activity.

65. In a further demonstration of its control over the operations of All Staffing, the Longview Entities conspired with S. Costello and A. Costello to control the Board of Directors of the publicly held company, Dalrada. Upon information and belief, the Longview Entities used its control over All Staffing to perpetuate and expand the fraudulent scheme, having arranged for workers compensation insurance to be provided to All Staffing and Dalrada customers by Alliance National Insurance Company ("Alliance") another insurance company that, upon information and belief, was along with Plaintiff subject to Defendants' fraudulent and other bad acts, and was at all relevant times a domestic stock insurance company organized pursuant to the laws of the State of New York, with its principal place of business at Plymouth Meeting, Pennsylvania sometime after Oriska and All Staffing severed their relationship prior to 2006. The switch of insurance carriers was an integral part of the fraud against Oriska and was orchestrated by the Longview Entities to prevent Oriska from timely discovering the fraud. Specifically, as an integral part of the fraud, the Longview Entities prevented Oriska from taking a meaningful audit, as permitted and required by the Oriska insurance policy, which could have led to the discovery of the fraud perpetrated by Defendants and has caused Oriska additional monetary damages in litigation expenses and lost interest on monies owed.

66. The Longview Entities thereafter caused Dalrada to "spin-off" or otherwise divest itself of ownership of All Staffing, placing All Staffing (and Dalrada's own PEO customers) squarely and completely under the direct control of an entity called Fenix, an entity created and controlled directly by the Longview Entities unfettered by any restraints of the Dalrada Board of Directors and the U.S. Securities and Exchange Commission reporting obligations of a public company. Upon information and belief, the divestiture by Dalrada of its interest in All Staffing was literally a "coup" ostensibly effected by the Longview Entities foreclosing on a security interest, a foreclosure which was itself a subterfuge, particularly since Dalrada never legally owned All Staffing.

67. At all relevant times, Fenix is and has been a straw corporation that is under the direct and exclusive control of the Longview Entities. That control is evidenced by, inter alia, the bogus creation by the Longview Entities of the false appearance that the Longview Entities hold a bona fide security interest in All Staffing's assets - - valuable customer lists - - when in fact no such security interest was ever legally created and no consideration was ever provided to Dalrada and /or All Staffing in support thereof.

68. Once the Longview Entities secured control over All Staffing and its fraudulent scheme, the Longview Entities embarked upon a second and separate course of action to harm Plaintiff. Upon information and belief, the Longview Entities systematically diverted All Staffing assets, including valuable customer lists, while continuing to deny Plaintiff access for contractually obligated audits in an effort to render All Staffing judgment proof and to prevent All Staffing creditors, including Plaintiff, from recovering losses from All Staffing's fraud.

**D. Upon Information And Belief, Defendants Defraud Alliance and Additional Insurers.**

69. Defendants and All Staffing have defrauded other insurers, including Alliance which is engaged in lawsuits with All Staffing in the State of Pennsylvania that encompass additional claims similar to those asserted here, including that, upon information and belief, All Staffing underreported gross employee payroll and misstated job classifications of its employees to Alliance and Archway.

70. Upon information and belief, Alliance provided workers compensation policies to All Staffing beginning in or around 2006. Upon information and belief, a "gap" year between coverage provided by Oriska and that provided by Alliance resulted in All Staffing being insured during that time by Imperial Casualty and Indemnity Company ("Imperial").

71. Upon information and belief, on or about September 15, 2006, Alliance provided Worker's Compensation insurance, pursuant to a policy covering Pennsylvania, New Jersey and New York with a $ 500,000.00 deductible. Upon information and belief , this policy was based on a representation made by All Staffing that the gross payroll for the workers to be covered was $ 72,513,600, and the premium to be paid for this policy was based on this payroll figure.

72. Upon information and belief, the estimated premium was $822,795 and was calculated based on classifications of employees derived from various codes and classifications of operations.

73. Upon information and belief, this Alliance policy also required premium audits. In a clear pattern of fraudulent conduct, All Staffing refused to allow such audits or provided false financial and loss information to auditors.

74. Upon information and belief, All Staffing intentionally misrepresented the payroll data and records upon which the Alliance policy premium was based in order to fraudulently obtain worker's compensation coverage at a reduced or lesser premium.

75. Upon information and belief, the conduct against Alliance violated Section 1102(9) of the Pennsylvania Worker's Compensation Act.

76. Based on these fraudulent misrepresentations of payroll data and employee code classification, upon information and belief, Alliance was financially harmed because it provided insurance coverage in exchange for a premium that was erroneous.

77. Upon information and belief, Alliance was advised in correspondence from a shareholder of All Staffing that the payroll figures relevant to the policy issued by Alliance for All Staffing were fraudulent and that such misrepresentation was a specific strategy employed by All Staffing to pay a less premium for insurance coverage.

78. On or about November 5, 2007, the Pennsylvania Compensation Rating Bureau issued a letter of criticism to All Staffing for misrepresenting during the "gap" year class codes to Imperial. Upon information and belief, claims asserted by Imperial against All Staffing were similar to those asserted by Plaintiff and were settled for a substantial cash payment by one or more of the Defendants to Imperial.

**COUNT I**
**VIOLATION OF 18 U.S.C. § 1962(c) and (d) (RICO)**
**(All Defendants Except All Staffing)**

79. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs, which are incorporated by reference as though set forth here at length and verbatim.

80. 18 U.S.C. § 1962(c) and (d) make it unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

81. All Defendants named in this Complaint, except for All Staffing, are persons within the meaning of 18 U.S.C. § 1961(3).

82. In violation of 18 U.S.C. § 1962(c) and (d), Defendants associated with All Staffing (the "Enterprise"), engaged in and conducted activities which affected interstate and foreign commerce.

83. Each Defendant, except for All Staffing, conducted and participated in the conduct of the affairs of the Enterprise and played a role in the management and operation of the Enterprise through a pattern of racketeering activities, which included, but were not limited to, mail fraud, wire fraud, and insurance fraud.

84. This pattern of racketeering is evidenced by certain illegal acts, defined as predicate acts of RICO liability under 18 U.S.C. § 1961, including, but not limited to, the following:

(a)    Wire fraud, as described in 18 U.S.C. § 1343, in that for the purpose of executing Defendants' scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, misrepresentations and promises, on at least one instance where Defendants misrepresented gross payroll amounts and class codes and premiums due, Defendants wire-transferred or caused to be wire-transferred both false business records and proceeds from premiums paid by All Staffing customers where no insurance policy had been issued.

(b)     Mail fraud, as described in 18 U.S.C. § 1341, in that for the purpose of executing Defendants' scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, misrepresentations and promises, on multiple occasions from 1990 to date, Defendants used United States mail to send false records of gross payrolls and employee classes and codes to insurers and, separately, false premium notices to clients when they had no insurance coverage in place;

(c)     Transporting, transmitting or transferring in interstate or foreign commerce stolen money, as described in 18 U.S.C. § 2314, in that for the purpose of executing Defendants' scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations and promises, on at least one instance, where Plaintiff and/or other insurers agreed to provide workers compensation insurance associated with the Enterprise, Defendants transferred or caused to be transferred in interstate and/or foreign commerce proceeds from premiums knowing the funds to have been stolen, converted and taken by fraud as the premiums were either being collected when no underlying insurance policy was issued or where such premiums were paid at a reduced amount based on Defendants' falsified records;

(d)     Insurance fraud, as described in the New York Insurance Frauds Prevention Act, N.Y. Ins. Law § 401 et seq., in that for the purpose of executing Defendants' scheme and artifice to defraud, it was necessary to obtain workers compensation insurance to secure lucrative client contracts, which insurance was either never procured or procured by use of false and misleading applications submitted to Plaintiff and other insurers.

(e)     Insurance fraud, as described in the Pennsylvania Unfair Insurance Practices Act, 40 P.S. § 1171.1 et seq., in that for the purpose of executing Defendants' scheme

and artifice to defraud, it was necessary to obtain workers compensation insurance to secure lucrative client contracts, which insurance was either never procured or procured by use of false and misleading applications submitted to Plaintiff and other insurers.

(f)     Insurance fraud, as described in the New Jersey Insurance Fraud Prevention Act, N.J.S.A. § 17:33A-1 et seq., in that for the purpose of executing Defendants' scheme and artifice to defraud, it was necessary to obtain workers compensation insurance to secure lucrative client contracts, which insurance was either never procured or was procured by use of false and misleading applications submitted to Plaintiff and other insurers.

85. The above-mentioned predicate acts of racketeering activity conducted by Defendants through the Enterprise caused Oriska and other insurers to execute workers compensation insurance policies based on falsified gross employee payrolls and employee class and code statements, and "straw men" entities like Dalrada and Fenix were used to hide the fraudulent acts of the Enterprise.   The Enterprise was illicitly enriched by the receipt of premiums from clients who never received insurance and from fraudulently reduced premium charges from insurers such as Oriska.   As a direct and proximate result of the falsified applications and periodic reporting statements, and use of straw men and sham companies, Plaintiff, other insurers, All Staffing clients and state regulatory agencies have been harmed.

86. By reason of the aforesaid violations of 18 U.S.C. § 1962(c) and (d), Plaintiff has suffered the loss of monies as a result of having received lower premiums than the coverage provided by its policies for the Enterprise and will be unable to recover the full amount of the losses incurred as a result of the Enterprise having wrongfully dissipated assets, and also has suffered other consequential, incidental and special damages.

WHEREFORE, on Count I, Plaintiff prays that this Court find and determine Defendants, except for All Staffing, are liable to Plaintiff, jointly and severally, and in the alternative, for violations of 18 U.S.C. § 1962(c) and (d), and award: (a) treble compensatory damages; (b) attorney's fees; (c) pre and post-judgment interest; (d) costs of suit; and (e) such other and further relief as the Court deems appropriate.

## COUNT II
### VIOLATION OF 18 U.S.C. § 1962(a) and (d) (RICO)
### (All Defendants Except All Staffing)

87. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs, which are incorporated by reference as though set forth here at length and verbatim.

88. 18 U.S.C. § 1962(a) and (d) make it unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal to use or invest, directly or indirectly, any part of such income or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

89. All Defendants named in this Complaint, except for All Staffing, are persons within the meaning of 18 U.S.C. § 1961(3).

90. In violation of 18 U.S.C. § 1962(a) and (d), Defendants associated with the Enterprise received income derived from a pattern of racketeering activity or through collection of an unlawful debt, which affected interstate and foreign commerce.

91. Each Defendant, except for All Staffing, used or invested any part of such income or proceeds of such income in acquiring any interest in or establishment or operation of the

Enterprise through a pattern of racketeering activities, which included, but were not limited to, mail fraud, wire fraud, and insurance fraud.

92. This pattern of racketeering is evidenced by certain illegal acts, defined as predicate acts of RICO liability under 18 U.S.C. § 1961, including, but not limited to, the following:

(a)     Wire fraud, as described in 18 U.S.C. § 1343, in that for the purpose of executing Defendants' scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, misrepresentations and promises, on at least one instance where Defendants misrepresented gross payroll amounts, class codes and premiums due, Defendants wire-transferred or caused to be wire-transferred both false business records and proceeds from premiums paid by All Staffing customers where no insurance policy had been issued.

(b)     Mail fraud, as described in 18 U.S.C. § 1341, in that for the purpose of executing Defendants' scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, misrepresentations and promises, on multiple occasions from 1990 to date, Defendants used United States mail to send false records of gross payrolls, and employee classes and codes to insurers and, separately, false premium notices to clients when they had no insurance coverage in place;

(c)     Transporting, transmitting or transferring in interstate or foreign commerce stolen money, as described in 18 U.S.C. § 2314, in that for the purpose of executing Defendants' scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations and promises, on at least one instance, where Plaintiff and/or other insurers agreed to provide workers compensation insurance associated with the Enterprise, Defendants transferred or caused to be transferred in interstate and/or foreign commerce proceeds from premiums

knowing the funds to have been stolen, converted and taken by fraud as the premiums were either being collected when no underlying insurance policy was issued or where such premiums were paid at a reduced amount based on Defendants' falsified records;

       (d)    Insurance fraud, as described in the New York Insurance Frauds Prevention Act, N.Y. Ins. Law § 401 et seq., in that for the purpose of executing Defendants' scheme and artifice to defraud, it was necessary to obtain workers compensation insurance to secure lucrative client contracts, which insurance was either never procured or was procured by use of false and misleading applications submitted to Plaintiff and other insurers.

       (e)    Insurance fraud, as described in the Pennsylvania Unfair Insurance Practices Act, 40 P.S. § 1171.1 et seq., in that for the purpose of executing Defendants' scheme and artifice to defraud, it was necessary to obtain workers compensation insurance to secure lucrative client contracts, which insurance was either never procured or procured by use of false and misleading applications submitted to Plaintiff and other insurers.

       (f)    Insurance fraud, as described in the New Jersey Insurance Fraud Prevention Act, N.J.S.A. § 17:33A-1 et seq., in that for the purpose of executing Defendants' scheme and artifice to defraud, it was necessary to obtain workers compensation insurance to secure lucrative client contracts, which insurance was either never procured or procured by use of false and misleading applications submitted to Plaintiff and other insurers.

93. The above mentioned predicate acts of racketeering activity conducted by Defendants through the Enterprise caused Plaintiff and other insurers to execute workers compensation insurance policies based on falsified employee class and code statements, sham corporations, partnerships and joint ventures, and "straw men" used to hide the fraudulent acts

of the Enterprise. The Enterprise was illicitly enriched by the receipt of premiums from clients and underfunded policies from insurers such as Plaintiff. As a direct and proximate result of the falsified applications and use of straw men and sham companies, Plaintiff, other insurers and clients and state regulatory agencies have been harmed.

94. By reason of the aforesaid violations of 18 U.S.C. § 1962(a) and (d), Plaintiff has suffered the loss of monies as a result of having received lower premiums than the coverage provided by its policies for the Enterprise and will be unable to recover the full amount of the losses incurred as a result of having executed such policies to the Enterprise, and also has suffered other consequential, incidental and special damages.

WHEREFORE, on Count II, Plaintiff prays that this Court find and determine Defendants, except for All Staffing, are liable to Plaintiff, jointly and severally, and in the alternative, for violations of 18 U.S.C. § 1962(a) and (d), and award: (a) treble compensatory damages; (b) attorney's fees; (c) pre and post-judgment interest; (d) costs of suit; and (e) such other and further relief as the Court deems appropriate.

### COUNT III
### VIOLATION OF 18 U.S.C. § 1962(b) and (d) (RICO)
### (All Defendants Except All Staffing)

95. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs, which are incorporated by reference as though set forth here at length and verbatim.

96. 18 U.S.C. § 1962(b) and (d) make it unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or

control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

97. All Defendants named in this Complaint, except for All Staffing, are persons within the meaning of 18 U.S.C. § 1961(3).

98. In violation of 18 U.S.C. § 1962(b) and (d), Defendants associated with the Enterprise, acquired or maintained interest in or control of the Enterprise, which affected interstate and foreign commerce.

99. Each Defendant, except for All Staffing, conducted and participated in the conduct of the affairs of the Enterprise and played a role in the management and operation of the Enterprise through a pattern of racketeering activities, which included, but were not limited to, mail fraud, wire fraud, and insurance fraud.

100. This pattern of racketeering is evidenced by certain illegal acts, defined as predicate acts of RICO liability under 18 U.S.C. § 1961, including, but not limited to, the following:

(a)     Wire fraud, as described in 18 U.S.C. § 1343, in that for the purpose of executing Defendants' scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, misrepresentations and promises, on at least one instance where Defendants misrepresented class codes and premiums due, Defendants wire-transferred or caused to be wire-transferred both business records and proceeds from premiums paid by All Staffing customers where no insurance policy had been issued.

(b)     Mail fraud, as described in 18 U.S.C. § 1341, in that for the purpose of executing Defendants' scheme and artifice to defraud, and to obtain money by means of false and

fraudulent pretenses, misrepresentations and promises, on multiple occasions from 1990 to date, Defendants used United States mail to send false records of gross payrolls, and employee classes and codes to insurers and, separately, false premium notices to clients when they had no insurance coverage in place;

(c)     Transporting, transmitting or transferring in interstate or foreign commerce stolen money, as described in 18 U.S.C. § 2314, in that for the purpose of executing Defendants' scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations and promises, on at least one instance, where Plaintiff and/or other insurers agreed to provide workers compensation insurance associated with the Enterprise, Defendants transferred or caused to be transferred in interstate and/or foreign commerce proceeds from premiums knowing the funds to have been stolen, converted and taken by fraud as the premiums were either being collected when no underlying insurance policy was issued or where such premiums were paid at a reduced amount based on Defendants' falsified records;

(d)     Insurance fraud, as described in the New York Insurance Frauds Prevention Act, N.Y. Ins. Law § 401 et seq. (the "Act"), in that for the purpose of executing Defendants' scheme and artifice to defraud, it was necessary to obtain workers compensation insurance to secure lucrative client contracts, which insurance was either never procured or was procured by use of false and misleading applications submitted to Plaintiff and other insurers.

(e)     Insurance fraud, as described in the Pennsylvania Unfair Insurance Practices Act, 40 P.S. § 1171.1 et seq., in that for the purpose of executing Defendants' scheme and artifice to defraud, it was necessary to obtain workers compensation insurance to secure

lucrative client contracts, which insurance was either never procured or procured by use of false and misleading applications submitted to Plaintiff and other insurers.

(f)     Insurance fraud, as described in the New Jersey Insurance Fraud Prevention Act, N.J.S.A. § 17:33A-1 et seq., in that for the purpose of executing Defendants' scheme and artifice to defraud, it was necessary to obtain workers compensation insurance to secure lucrative client contracts, which insurance was either never procured or procured by use of false and misleading applications submitted to Plaintiff and other insurers.

101.  The above mentioned predicate acts of racketeering activity conducted by Defendants through the Enterprise caused Plaintiffs and other insurers to execute workers compensation insurance policies based on falsified employee class and code statements, sham corporations, partnerships and joint ventures, and "straw men" used to hide the fraudulent acts of the Enterprise.  The Enterprise was illicitly enriched by the receipt of premiums from clients and underfunded policies from insurers such as Plaintiff.  As a direct and proximate result of the falsified applications and use of straw men and sham companies, Plaintiff, other insurers and clients and state regulatory agencies have been harmed.

102.  By reason of the aforesaid violations of 18 U.S.C. § 1962(b) and (d), Plaintiff has suffered the loss of monies as a result of having received lower premiums than the coverage provided by its policies for the Enterprise and will be unable to recover the full amount of the losses incurred as a result of having executed such policies to the Enterprise, and also has suffered other consequential, incidental and special damages.

WHEREFORE, on Count III, Plaintiff prays that this Court find and determine Defendants, except for All Staffing, are liable to Plaintiff, jointly and severally, and in the

alternative, for violations of 18 U.S.C. § 1962(b) and (d), and award: (a) treble compensatory damages; (b) attorney's fees; (c) pre and post-judgment interest; (d) costs of suit; and (e) such other and further relief as the Court deems appropriate.

**COUNT IV**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
**(All Defendants)**

103. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs, which are incorporated by reference as though set forth here at length and verbatim.

104. Each Defendant conducted, participated and/or conspired to deceive Plaintiff, other insurers, and All Staffing clients and their employee members of the public and state regulatory agencies by falsifying gross payroll records, and employee class and code records, to obtain lower than required premiums and by canceling the insurance obtained while continuing to collect premiums from All Staffing clients and their employees.

105. Each Defendant willingly conducted and participated and/or conspired to conduct and participate in the aforesaid wrongs with full knowledge of two sets of business records books having been maintained by Defendants and continued by the Defendant sham corporations.

106. Defendants' engaged in these willing and knowing deceptive acts in violation of the General Business Law § 349.

107. As a direct and proximate result of Defendants' deceptive business practices directed at members of the public, Plaintiff has suffered substantial and ongoing damages.

WHEREFORE, on Count IV, Plaintiff prays that this Court find and determine Defendants are liable to Plaintiff, jointly and severally, for violation of New York General Business Law §

349, and award: (a) treble actual damages; (b) attorney's fees; (c) pre and post-judgment interest; (d) costs of suit; and (e) such other and further relief as the Court deems appropriate.

## COUNT V
### VIOLATION OF PENNSYLVANIA TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. § 201-1
### (All Defendants)

108. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs, which are incorporated by reference as though set forth here at length and verbatim.

109. Each Defendant conducted, participated and/or conspired to deceive Plaintiff, other insurers, and All Staffing clients and their employee members of the public and state regulatory agencies by falsifying gross payroll records, and employee class and code records, to obtain lower than required premiums and by canceling the insurance obtained while continuing to collect premiums from All Staffing clients and their employees.

110. Each Defendant willingly conducted and participated and/or conspired to conduct and participate in the aforesaid wrongs with full knowledge of two sets of business records books having been maintained by Defendants and continued by the Defendant sham corporations.

111. Plaintiff's and Defendants' insurance products and/or services are intended to serve family, personal or household purposes.

112. Defendants engaged in these willing and knowing fraudulent and/or deceptive acts in violation of the 73 P.S. § 201-1.

113. As a direct and proximate result of Defendants' fraudulent and/or deceptive practices directed at members of the public, Plaintiff has suffered substantial and ongoing damages.

WHEREFORE, on Count IV, Plaintiff prays that this Court find and determine Defendants are liable to Plaintiff, jointly and severally, for violation of Pennsylvania Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, and award: (a) treble actual damages; (b) attorney's fees; (c) pre and post-judgment interest; (d) costs of suit; and (e) such other and further relief as the Court deems appropriate.

**COUNT VI**
**FRAUD**
**(All Defendants)**

114. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs, which are incorporated by reference as though set forth here at length and verbatim.

115. By the illegal and fraudulent acts and schemes described above, Defendants willfully and intentionally defrauded Plaintiff, other insurers, and Defendants' clients and their employees and state regulatory agencies and made or caused to be made false, fraudulent and material misrepresentations and omissions to Plaintiff, other insurers, and Defendants' clients and their employees and state regulatory agencies, concerning the workers compensation insurance and corresponding premiums for policies Plaintiff and other insurers provided. Each workers compensation insurance policy was fraudulently obtained in that each was executed based upon falsified applications and periodic written reports, and certain All Staffing clients and their employees were defrauded when Defendants canceled said policies and continued to collect premiums, and state regulatory agencies were defrauded by Defendants maintaining two sets of business records and misrepresenting the coverage they ostensibly had secured to prevent their scheme from being uncovered and acting as an unregulated self-insurer to process and control claims for which no primary insurance coverage actually existed.

116. In making and carrying out these material misrepresentations, Defendants, jointly and severally, intended to and did deceive and defraud Plaintiff, other insurers, and All Staffing's clients and their employees and state regulatory agencies. Oriska, other insurers and All Staffing's clients and their employees and state regulatory agencies relied upon Defendants' material misrepresentations and omissions to their detriment in procuring and executing workers compensation insurance through Defendants.

117. As a direct and proximate result of Defendants' material misrepresentations and omissions, Plaintiff has suffered substantial and ongoing damages.

WHEREFORE, on Count VI, Plaintiff prays that this Court find and determine Defendants are liable to Plaintiff, jointly and severally, for fraud, and award: (a) compensatory damages; (b) punitive damages; (c) attorney's fees; (d) pre and post-judgment interest; (e) costs of suit; and (f) such other and further relief as the Court deems appropriate.

**COUNT VII**
**FRAUDULENT INDUCEMENT TO CONTRACT**
**(All Defendants)**

118. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs, which are incorporated by reference as though set forth here at length and verbatim.

119. As an inducement for Plaintiff to accept Defendants' proposal and provide workers compensation insurance coverage for Defendants' clients, Defendants made certain material misrepresentations and omissions (the "Misrepresentations").

120. The Misrepresentations included falsifying applications and periodic written reports to obtain lower insurance premiums. The Misrepresentations included but were not

limited to falsely reporting gross payroll amounts and misclassifying job codes and classifications for All Staffing customers.

121. Upon information and belief, at the time that Defendants made the Misrepresentations, Defendants knew, should have known, or recklessly disregarded the fact, that the Misrepresentations would mislead Oriska, and that Oriska would reasonably act in reliance upon them.

122. Defendants' actions show intentional, fraudulent, malicious and/or reckless conduct, thereby entitling Plaintiff to recover punitive damages in an amount to be determined at trial.

WHEREFORE, on Count VII, Plaintiff prays that this Court find and determine Defendants are liable to Plaintiff, jointly and severally, for fraudulent inducement to contract, and award: (a) compensatory damages; (b) punitive damages; (c) attorney's fees; (d) pre and post-judgment interest; (e) costs of suit; and (f) such other and further relief as the Court deems appropriate.

## COUNT VIII
## CONSTRUCTIVE FRAUD
### (All Defendants)

123. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs, which are incorporated by reference as though set forth here at length and verbatim.

124. As a result of the illegal and fraudulent acts and schemes described above, Defendants worked a constructive fraud upon Plaintiff, other insurers, and All Staffing's clients and their employees and state regulatory agencies, regardless of whether they all specifically

knew of the false, fraudulent, and misleading nature of each and every one of the misstatements and omissions alleged.

WHEREFORE, on Count VIII, Plaintiff prays that this Court find and determine Defendants are liable to Plaintiff, jointly and severally, and in the alternative, for constructive fraud, and award: (a) compensatory damages; (b) punitive damages; (c) attorney's fees; (d) pre and post-judgment interest; (e) costs of suit; and (f) such other and further relief as the Court deems appropriate.

## COUNT IX
## AIDING AND ABETTING FRAUD
### (All Defendants)

125. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs, which are incorporated by reference as though set forth here at length and verbatim.

126. By the illegal and fraudulent acts and schemes described above, Defendants participated in the fraud of Plaintiff, other insurers, and Defendants' clients and their employees and state regulatory agencies through active participation, aid, encouragement or ratification of the fraudulent conduct described above, for their own benefit, and did so having known of that fraud or but for their gross negligence and recklessness should have known of the fraudulent nature of that course of conduct.

127. Upon information and belief, each Defendant deliberately aided and abetted the other Defendants in connection with the fraudulent activities and scheme described above and by engaging in the conduct described above.

128. In aiding and abetting in making and carrying out these material misrepresentations, Defendants, jointly and severally, aided and abetted in intending to deceive

and defraud Plaintiff, other insurers, and All Staffing's clients and their employees and state regulatory agencies. Plaintiff, other insurers and All Staffing's clients and their employees and state regulatory agencies relied upon Defendants' material misrepresentations and omissions to their detriment in procuring and executing workers compensation insurance through Defendants.

129. As a direct and proximate result of each Defendant aiding and abetting in the other Defendants' material misrepresentations and omissions, Plaintiff has suffered substantial and ongoing damages.

WHEREFORE, on Count IX, Plaintiff prays that this Court find and determine Defendants are liable to Plaintiff, jointly and severally, for aiding and abetting fraud, and award: (a) compensatory damages; (b) punitive damages; (c) attorney's fees; (d) pre and post-judgment interest; (e) costs of suit; and (f) such other and further relief as the Court deems appropriate.

## COUNT X
### UNJUST ENRICHMENT
### (All Defendants)

130. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs, which are incorporated by reference as though set forth here at length and verbatim.

131. By virtue of their participation in the racketeering enterprise and criminal, fraudulent, and otherwise unlawful conduct as set forth herein, Defendants received the proceeds of premiums which were to be paid for the purposes of workers compensation insurance and/or received a lower than required premium rate, as well as other things of value to which they had no legal entitlement.

132. The unjust enrichment of Defendants has substantially corresponded and otherwise inured to the detriment of Plaintiff.

WHEREFORE, on Count X Plaintiff prays that this Court find and determine Defendants are liable to Plaintiff, jointly and severally, and in the alternative, for unjust enrichment and award: (a) compensatory damages; (b) punitive damages; (c) attorney's fees; (d) pre and post-judgment interest; (e) costs of suit; and (f) such other and further relief as the Court deems appropriate.

**COUNT XI**
**NEGLIGENT MISREPRESENTATION**
**(All Defendants)**

133. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs, which are incorporated by reference as though set forth here at length and verbatim.

134. In connection with the illegal, fraudulent, and otherwise wrongful acts and schemes described above, Defendants negligently made false and misleading statements of material fact to Plaintiff, other insurers, All Staffing's clients and their employees and state regulatory agencies when they knew, or should have known, of the false and misleading nature of such statements, with the intent to induce reliance by Plaintiff, other insurers, and All Staffing's clients and their employees and state regulatory agencies.

135. Plaintiff, other insurers, All Staffing's clients and their employees and state regulatory agencies reasonably relied upon the false and misleading statements of Defendants to their detriment.

136. Defendants' acts, as described above, constitute wrongful acts of misrepresentation.

137. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff has suffered substantial and ongoing damages.

WHEREFORE, on Count XI, Plaintiff prays that this Court determine that Defendants are liable to Plaintiff, jointly and severally, and in the alternative, for negligent misrepresentation, and award: (a) compensatory damages; (b) attorney's fees; (c) pre and post-judgment interest; (d) costs of suit; and (e) for such other and further relief as the Court deems appropriate.

**COUNT XII**
**CONSPIRACY TO COMMIT FRAUD, ETC.**
**(All Defendants)**

138. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs, which are incorporated by reference as though set forth here at length and verbatim.

139. The illegal and fraudulent acts described above were undertaken in furtherance of a common plan and conspiracy designed to accomplish the unlawful objects described above. Specifically, one of the objectives of the conspiracy was to obtain workers compensation insurance illicitly from Plaintiff at such premium rates in amounts far below what was required for the actual gross payrolls of All Staffing clients and by altering the class and code of the employees to be insured, and to hide the fraud by regularly switching insurance carriers to cancel previously issued policies and by controlling the handling of employee claims for workers compensation injuries. Another objective of the conspiracy was to dupe All Staffing's clients and their employees into believing they were covered by workers compensation insurance, cancel that insurance and continue to collect premiums from the clients and employees. A third objective of the conspiracy was to circumvent the regulatory police powers of state agencies to regulate and police the insurance industry and to safeguard the public by

maintaining two sets of business records, misrepresenting the coverage Defendants secured in an effort to prevent their scheme from being uncovered, and essentially functioning as an unregulated insurance carrier.  The ultimate purpose of the conspiracy was to illicitly obtain illegal profits from both insurers and the purportedly insured clients and their employees.

WHEREFORE, on Count XII, Plaintiff pray that this Court determine that Defendants are liable to Plaintiff, jointly and severally, and in the alternative, for conspiracy to defraud Oriska, and award: (a) compensatory damages; (b) punitive damages; (c) attorney's fees; (d)  pre and post-judgment interest; (e) costs of suit; and (f) such other and further relief as the Court deems appropriate.

> WOLFF & SAMSON PC
> Attorneys for Plaintiff
> ORISKA INSURANCE COMPANY
> The Offices at Crystal Lake
> One Boland Drive
> West Orange, NJ 07052

Dated: April 23, 2009

By _____
    ROBERT E. NIES (REN-3034)

1178881.1

43

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues herein.

WOLFF & SAMSON PC
Attorneys for Plaintiff
ORISKA INSURANCE COMPANY
The Offices at Crystal Lake
One Boland Drive
West Orange, NJ 07052

Dated: April 23, 2009

By _____
ROBERT E. NIES (REN-3034)